Michael G. Chapman, Esq. (SBN 1630)
Steven M. Silva, Esq. (SBN 12492)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2271   Fax: 775-788-2291
mchapman@fclaw.com; ssilva@fclaw.com

Anne Marie O'Brien (NE Bar # 18271)
Michael L. Storey (NE Bar # 24960)
LAMSON, DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Tel: (402) 397-7300
Fax: (402) 397-1767
aobrien@ldmlaw.com; mstorey@ldmlaw.com
*Attorneys for Plaintiff Union Pacific Railroad Company, a Delaware Corporation*
*Application for Pro Hoc Vice to be Submitted*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, A Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WINECUP RANCH, LLC, an Idaho Limited Liability Company; and WINECUP GAMBLE, INC., a Nevada Corporation; and PAUL FIREMAN, an individual,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## COMPLAINT

Plaintiff, UNION PACIFIC RAILROAD COMPANY ("**Union Pacific**"), for its cause of action against Defendants, and each of them individually, states and alleges as follows:

### PARTIES

1. Union Pacific is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Omaha, Nebraska. It is in the

business of providing interstate freight transportation by rail in 23 states in the western two-thirds of the United States. As part of its interstate business Union Pacific hauls freight on its mainline tracks, providing a critical link in the global supply chain. A portion of these tracks run in an east/west manner from the State of Utah, across the Utah/Nevada State line, and through Elko County, Nevada near the property of the Defendants.

2. Defendant WINECUP RANCH, LLC (the "**Ranch**") is registered in Nevada as a foreign limited-liability company. In Nevada government records, the Ranch states that its officers reside in Oakley, Idaho, which upon information and belief is the Limited Liability Company's principal location.

3. Upon information and belief and at all times herein the Ranch has maintained and operated the Twenty-Three Mile Dam ("**Dam**"), which is the subject of this Complaint, in cooperation with the other Defendants and/or as a joint venture. The Dam is described with more particularity in paragraph 6 herein. The Dam is located in Elko County, Nevada, on property which is at, near, or contiguous to the Railroad's tracks.

4. Defendant WINECUP GAMBLE, INC (the "**Corporation**") is a Nevada corporation organized and existing under the laws of the State of Nevada with its principal place of business located in Elko, Nevada. Upon further information and belief and at all times herein the Corporation is the owner of the Dam and the property whereupon it is located. The Corporation has also maintained and operated the Dam in cooperation with the other Defendants and/or as a joint venture.

5. Defendant PAUL FIREMAN ("**Fireman**") is the principle owner and President of the Corporation, which is closely held and has only two shareholders: Fireman and his wife. Upon information and belief Fireman is a resident of the State of Florida. Upon further information and belief Fireman was in sole control of the Corporation and acted as the outright owner of the real and personal property of the Winecup Gamble ranch. Upon further information and belief the Corporation was the alter ego of Fireman, with little to no separate identity between the corporate entity and Fireman; and he did not create the Corporation for legitimate business purposes but rather to derive certain additional personal benefits. Upon further

information and belief Fireman exercised complete control of the Corporation and failed to authorize adequate expenditures to operate, repair and maintain the Dam; and Fireman chose not to properly capitalize the Corporation to cover losses from any Dam failure, which is detrimental to the Corporation's creditors.

6. The Dam (a/k/a Twenty Three Mile Dam, the Twenty one Mile Dam or 21 Mile Dam) is identified by ID # NV00110 and the legal description of 189CN42 E67 15BA. It is located on Thousand Springs Creek on the property owned and managed by the Ranch and the Corporation in Elko County, Nevada.

## JURISDICTION AND VENUE

7. Paragraphs 1 through 6 of this Complaint are incorporated as though fully set forth herein.

8. This Court has original subject matter jurisdiction over this case because the parties have diverse citizenships and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00). 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over the Defendants in this case because the Dam is located in Nevada, and each of the Defendants' acts or omissions alleged herein occurred in the State of Nevada. In addition, the Defendants have directed their activities and consummated transactions relating to their property and the Dam within this jurisdiction, and the injury suffered because of Defendants' negligence occurred in this State.

10. Under 28 U.S.C. § 1391 venue is proper in this judicial district because the property which is the subject of this action is located in Nevada and a substantial part of the events or omissions giving rise to the claim occurred in this State.

## FACTS

11. Paragraphs 1 through 10 of this Complaint are incorporated as though fully set forth herein.

12. The Dam is an earthen embankment which is approximately 600 feet in length. It is approximately 60 feet tall with a top width of around 20 feet, and a reservoir of approximately 300 acres. The flows from the reservoir are controlled through an outlet discharge tunnel which

is a 3 feet wide concrete pipe with a flow capacity of 250 cubic feet per second. An emergency spillway is located on the Dam's north end, about nine feet below the crest of the Dam.

13. Prior to February 8, 2017, uncontrolled seepage from the foundation of the Dam had been evident for many years on the opposite side of the embankment. Previous inspection reports dated as early as 1996 from the State of Nevada Division of Water Resources warned the Defendants of structural safety problems with the Dam's earthen embankment and outlet tunnel. In repeated State inspections the outlet tunnel was found to be full of debris and silt, which prevented the release of water from the reservoir and created hydraulic pressure on the Dam's foundation. The valves and operating works were also found to be inoperable at the time of inspections. There was seepage from the foundation of the Dam that indicated structural integrity issues.

14. The State recommended as early as 1996 that the Defendants clear the tunnel and operate the outlet through its full range of motion at least twice annually to make certain that it could and would operate as intended to relieve any pressure on the earthen embankment during peak watershed flow. In 2002, the State of Nevada informed Defendants in a report that the outlet and spillway at the Dam could not convey flood peaks of the 10 year magnitude. Defendants were put on written notice that the Dam's current condition could not withstand more than a 10 year flood event.

15. On September 19, 2003 the State sent a letter to Defendants requesting that within the next 3 years the Defendants "undertake a program for investigation of the hydraulic adequacy of the Dam with respect to flooding (so-called 100 year event) and seeping under a full hydraulic head (reservoir full)." The Defendants never prepared or submitted an investigation to the State as requested. Defendants did not repair or remediate the Dam to accommodate a full reservoir or a 100 year event as required by the State of Nevada.

16. On May 21, 2012, a subsequent State inspection report on the Dam noted that vegetation and debris surrounding the outlet channel were still present. The report recommended that it be removed, and that all vegetation on the face of the Dam should be removed as it emerges on a continuing basis. The report noted again that the Dam was seeping from below and

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

wearing away a section of the Dam's foundation at the center of the toe. The 2012 State inspection found "major seepage...apparently from underneath the main structure" of the Dam. The State again suggested that Defendants perform regular maintenance of the Dam to make certain that its parts were operating. The 2012 State inspector noted that "no one has been here in years," little had changed, and no improvements had been made in the intervening 10 years. The State Inspector recommended in his April 17, 2012 inspection report that the Defendants attend to the "major" seepage at the base of the Dam which was coming from underneath the main embankment structure. The State provided these reports to Defendants.

17. A subsequent inspection by the Nevada Division of Water Resources on July 27, 2016 found that the Dam outlet tunnel was again obstructed by visible debris, vegetation and soil erosion. The outlet controls did not appear to be working. The inspection also found that deep rooted vegetation had been growing on the Dam, posing a structural problem. The inspection report sent to the Defendants dated September 6, 2016 directed that within one year the outlet tunnel should be (again) cleared to prevent backwater conditions, vegetation should be removed to prevent damage to the earthen embankment and burrowing from animals, and the seepage ponds should be monitored.

18. On or about February 8, 2017, the Dam failed. In the days preceding the failure precipitation and snowmelt occurred in the watershed, adding water to the Dam's reservoir. Records show that the precipitation did not amount to a 100 year flood event. The water in the Dam did not overtop the embankment at any time, and the failure occurred before the water level in the reservoir reached the level of the emergency spillway.

19. On or before February 8, 2017, the Dam's outlet tunnel was in the closed position. Because of this, excess water was unable to flow out of the reservoir. The added precipitation in the reservoir created undue hydraulic pressures on the Dam's earthen foundation. The failure occurred at the base of the Dam when a portion of the embankment gave way due to hydraulic pressure.

20. As a result of the failure a massive amount of water flowed down from the Dam's reservoir and disgorged its contents downstream. This failure and release of water caused

catastrophic flooding. The water washed out a large portion of Union Pacific's railroad tracks located downstream in Elko County. It removed the Railroad's right-of-way, track bank and slope, and the physical infrastructure which supported the tracks. The water was so swift and powerful that it washed away the earth that elevated the tracks, leaving the tracks suspended in the air as if a bridge existed at one time underneath. Freight train passage was impossible for a lengthy period of time due to the washout. Union Pacific was unable to move its freight from Utah to points west, north and south in Nevada and to timely service its customers. The flood from the Dam's reservoir altered the land's topography and watershed runoff, requiring the Railroad to add additional infrastructure to its rights of way in order to adequately support its tracks and to prevent additional surface water damage.

21. At all times and pursuant to Nevada Administrative Code Section 535.240, the Dam was required, at minimum, to be able to withstand 100 year flood event and to maintain its integrity during such an event. The State of Nevada warned Defendants in 2002 and 2003 that the structural integrity of the Dam could not support more than a 10 year flood event.

## COUNT I - NEGLIGENCE

22. Paragraphs 1 through 21 of this Complaint are incorporated as though fully set forth herein.

23. At all times material to this action, Defendants, and each of them, had a duty to maintain, repair, and operate the Dam in a safe condition in accordance with statutory mandates and common law. This includes the duty to maintain, repair, and operate the Dam in a safe manner to avoid damages and flooding to the property of Union Pacific, its rights of way, and its tracks.

24. Defendants, and each of them, breached their duties in one or more of the following ways:

    a) Failing to have an adequate Dam safety program and practices in place to prevent a failure;

    b) Failing to inspect the Dam and to determine whether the Dam and all of its parts were capable of operating as intended at all times;

  c) Failing to test the Dam parts to determine whether they are capable of operating as intended at all times;

  d) Failing to take action prior to the precipitation event to clear the stress relief outlet pipes of debris;

  e) Failing to take action prior to the precipitation event to open the stress relief outlet pipes;

  f) Failing to monitor the Dam after precipitation occurred in the watershed, and just prior to the failure, in order to determine whether the structural integrity of the Dam was sufficient during the precipitation to prevent a failure;

  g) Failing to operate and open the stress relief outlet pipes after precipitation began in the watershed and just prior to the failure;

  h) Failing to repair the Dam structure and its parts in order to prevent foundational seepage prior to February 8, 2017;

  i) Failing to remove vegetation on the Dam which affected its integrity prior to February 8, 2017;

  j) Failing to follow the safety recommendations of the Nevada Dam inspectors prior to February 8, 2017;

  k) Failing to maintain the Dam to prevent a failure;

  l) Failing to repair the Dam to prevent a failure;

  m) Failing to operate the Dam to prevent a failure; and/or

  n) Additional acts or omissions which shall become known in the future during the course of discovery.

25. Defendants knew or reasonably should have known that its negligent acts and omissions could foreseeably result in the Dam failing because the State of Nevada had warned the Defendants of the Dam's safety deficiencies, its defects, and the potential for structural instability in multiple letters and reports prior to February 8, 2017. Had the Defendants implemented a reasonably adequate safety, inspection, repair and/or maintenance program prior to February 8, 2017, Defendants would have known, or reasonably should have known, of any

such Dam defects and the potential for structural instability in a timely manner in order to make corrections prior to February 8, 2017.

26. As a result of Defendants' negligence, Defendants caused or contributed to cause the Dam failure and the release of water from the reservoir on or about February 8, 2017.

27. As a direct and proximate result of the Dam failure, Union Pacific sustained actual and consequential damages in excess of Seventeen Million Dollars ($17,000,000.00).

## COUNT II: NEGLIGENCE *PER SE*

28. Paragraphs 1 through 27 of this Complaint are incorporated as though fully set forth herein.

29. Nevada Statutes and Administrative Code sections mandated that Defendants obey the following State standards:

    a) Operate and maintain the Dam and works appurtenant to the Dam in a safe manner and in accordance with all applicable permits, laws and regulations [and] [t]ake all necessary action allowed by law to prevent the failure of the Dam (Nev. Admin. Code § 535.370);

    b) Perform at their expense any other work necessary for maintenance and operation which will safeguard life and property (Nev. Admin. Code § 535.370);

    c) Construct, operate and maintain the Dam with a drainage capacity sufficient to pass, without overtopping, an amount of water equal to the storm runoff generated by a storm whose annual chance of exceedance is 1 percent (Nev. Admin. Code § 535.040 and § 535.240); and/or

    d) Union Pacific may rely on additional statutes and administrative codes that may become known in the future during the course of discovery.

30. These statutes and codes are legislatively imposed standards of conduct obligating Defendants to act in accordance thereto.

31. The purpose of Nevada's statutes and codes on the construction, maintenance, and operation of dams in Nevada is to protect the health, safety, and welfare of the life and property of the Dam's downstream neighbors.

32. Union Pacific, with track, trains, and employees located downstream from the Dam, is part of the class of persons / entities that the Nevada legislature intended to protect with its regulations.

33. Defendants violated these statutes and codes in one or more of the ways set forth in paragraph 24 and 29.

34. As a direct and proximate result of Defendants' failure to adhere to these statutes and codes, Defendants caused or contributed to cause the Dam to fail and caused the release of water from the reservoir on or about February 8, 2017.

35. As a further result of Defendants' failure to adhere to these statutes and codes, Union Pacific sustained actual and consequential damages in excess of Seventeen Million Dollars ($17,000,000.00).

## DEMAND FOR PUNITIVE DAMAGES

36  Paragraphs 1 through 35 of this Complaint are incorporated as though fully set forth herein.

37. Defendants' behavior, both individually and collectively, demonstrated indifference and a reckless disregard to the health, safety, and welfare of the Dam's downstream neighbors. Despite repeated warnings from the State of Nevada and the foreseeable and obvious consequences that would occur because of their recklessness, as alleged in paragraphs 12 through 20, Defendants chose to ignore its common law and regulatory obligations in favor of their own financial well-being with reckless indifference to the rights and interests of Union Pacific.

38. Defendants' failures were not isolated to a single instance, but instead, were repeated since 1996. Despite numerous and repeated warnings, Defendants' acted in a way that not only threatened extensive property damage but threatened the safety of the citizens of Nevada and Union Pacific employees, all of whom were located downstream from the Dam.

39. Defendants engaged in inexcusable conduct that subjected Union Pacific to unjust hardship because of the Defendants' failure to properly maintain and operate the Dam.

40. Union Pacific is entitled to the maximum award of punitive damages allowed by law.

FENNEMORE CRAIG, P.C.
300 E SECOND ST
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

## PRAYER FOR RELIEF

WHEREFORE, Union Pacific hereby prays for a judgment in its favor and against Defendants and each of them on one or both of the causes of action set forth in the Complaint; and for an award of damages totaling in excess of Seventeen Million Dollars ($17,000,000.00); consequential damages; punitive damages; pre-judgment and post-judgment interest; the costs and fees incurred in prosecuting this action; and such other reasonable sums as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 10th day of August, 2017.

Respectfully submitted,

FENNEMORE CRAIG, P.C.

Michael G. Chapman (NV Bar #1630)
Steven M. Silva (NV Bar #12492)
Fennemore Craig, P.C.
300 E 2nd Street Suite 1510
Reno, NV 89501
Tel: (775) 788-2200 - Fax: (775) 786-1177
mchapman@fclaw.com
ssilva@fclaw.com

and

Anne Marie O'Brien (NE Bar # 18271)
Michael L. Storey (NE Bar #24960)
LAMSON, DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Tel: (402) 397-7300
Fax: (402) 397-1767
aobrien@ldmlaw.com
mstorey@ldmlaw.com
*Attorneys for Plaintiff Union Pacific Railroad Company, a Delaware Corporation*
*Application for Pro Hoc Vice to be Submitted*