PARSONS BEHLE & LATIMER
Michael R. Kealy, Esq., NV Bar No. 971
Ashley C. Nikkel, Esq., NV Bar No. 12838
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Telephone: (775) 323-1601
Email: mkealy@parsonsbehle.com
anikkel@parsonsbehle.com

SHOOK HARDY & BACON LLP
Gary M. Elden (Admitted Pro Hac Vice)
Riley C. Mendoza (Admitted Pro Hac Vice)
Kathleen M. Ryan (Admitted Pro Hac Vice)
111 S. Wacker Drive, Suite 4700
Chicago Illinois 60606
Telephone: (312) 704-7700
Email: gelden@shb.com
rmendoza@shb.com
kxryan@shb.com

*Attorneys for Plaintiff*
*Union Pacific Railroad Company*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>               Plaintiff,<br>v.<br><br>WINECUP GAMBLE, INC., a Nevada corporation,<br><br>               Defendant. | Case No. 3:17-cv-00477-LRH-CLB<br><br>UNION PACIFIC'S REPLY IN SUPPORT OF ITS SEVENTH MOTION *IN LIMINE* TO EXCLUDE DEREK GODWIN |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION: WHY A REPLY BRIEF IS NEEDED ........................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   § 213.33 Covers Drainage Design. ................................................................................... 2

II.  Godwin's Testimony Does Not Address § 213.33. ............................................................ 5

CONCLUSION ............................................................................................................................... 6

## INTRODUCTION: WHY A REPLY BRIEF IS NEEDED[1]

UPMIL 7 sought to exclude contributory negligence as an issue and Godwin's opinion on that subject. UPMIL 7 raised three alternative grounds, on the last two of which we seek no reply. On one ground we seek to respond to arguments raised by Winecup but not addressed in our initial brief, that being preemption by federal law.

In UPMIL 7, Union Pacific argued that the Federal Rail Safety Act (FRSA) preempts Winecup's contributory negligence defense. The FRSA preempts state law—including "[l]egal duties imposed on railroads by the common law," *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)—if the Federal Railroad Administration (FRA) has "prescribe[d] a regulation . . . covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). The FRA, in fact, has issued a regulation that specifically covers any "drainage or other water carrying facility under or immediately adjacent to the roadbed." 49 C.F.R. § 213.33. This regulation subsumes the subject matter of, and thus preempts, Winecup's contributory negligence defense. ECF No. 124 at 4–8. Godwin's opinion that Union Pacific's culverts were negligently designed, which does not assert that Union Pacific violated § 213.33—or even reference the controlling regulation—should be thus excluded.

Winecup offers two responses to Union Pacific's preemption arguments: (1) that § 213.33 covers only the maintenance, not the design, of drainage facilities; and (2) even if § 213.33 covers the subject matter of Winecup's defense, Godwin's testimony is still relevant to whether Union Pacific complied with § 213.33. As explained below, both points are mistaken.

---

[1] As in prior briefs, the parties will be called Union Pacific and Winecup. Union Pacific's Motions *in Limine* will be referred to as "UPMIL."

# ARGUMENT

## I. § 213.33 Covers Drainage Design.

Winecup says that § 213.33 does not cover the subject matter of its defense because the regulation "is limited to a railroad's obligation to maintain a drainage and keep it free of obstruction" and "does not contain any specification for the size of culverts." ECF No. 161 at 6–8. Winecup thus assumes that an FRA regulation does not cover the subject matter unless it explicitly addresses the exact same issue as the alleged state-law claim. That position is wrong for two reasons.

*First*, where a federal agency examines a specific issue and decides not to regulate, that decision can "take[ ] on the character of a ruling that no such regulation is appropriate," preempting any state law on the same issue. *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 178 (1978). Thus, when "FRA examines a safety concern regarding an activity and affirmatively decides that no regulation is needed, this has the effect of being an order that the activity is permitted." *Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 801 (7th Cir. 1999). The Ninth Circuit has applied this principle to find preemption based on FRA's considered decisions not to regulate certain issues. *See Burlington N. R. Co. v. Montana*, 880 F.2d 1104, 1106–07 (9th Cir. 1989) (holding that FRA's "refusal to adopt a federal caboose requirement" preempted a state statute to the contrary); *Marshall v. Burlington N., Inc.*, 720 F.2d 1149, 1153–54 (9th Cir. 1983) (holding that FRA's conclusion that alerting lights were ineffective in reducing incidents of grade-crossing accidents preempted a state law negligence claim that the railroad failed to install on-train warning lights).

The same reasoning applies here. FRA specifically considered, but did not adopt, a culvert-size requirement in § 213.33. As originally proposed in 1971, the drainage regulation provided in part:

> If, after drainage facilities are constructed, there is a significant change in the water flow adjacent to the roadbed, each existing drainage facility must be modified or additional drainage facilities must be installed, as the case may be, to accommodate the change.

36 Fed. Reg. 11,974, 11,975–76 (June 23, 1971). After a comment period, FRA promulgated the drainage regulation as it exists today—*without* an affirmative obligation to design new or modify existing railroad culverts to accommodate a change in expected water flow. 36 Fed. Reg. 20,336, 20,339 (Oct. 20, 1971). Moreover, FRA considered modifications to Section 213.33 in 1998. One interest group petitioned FRA to expand the drainage regulation "to include more specific requirements for drainage and water diversion around track roadbeds, addressing water seeping toward the track, water falling upon the roadbed, cross drainage, and the use of geotextiles." 62 Fed. Reg. 36,138, 36,147 (July 3, 1997). FRA again declined to adopt any of the recommended changes. 63 Fed. Reg. 33,992, 34,004, 34,032 (June 22, 1998).

Winecup is thus correct that § 213.33 "embodies no affirmative obligation to add more drainage openings to the roadbed," FRA Letter Opinion, Request for Letter Opinion on Meaning and Scope of 49 C.F.R. § 213.33, at 2 (Nov. 28, 2017),[2] but that does not mean its contributory negligence defense survives. Rather, the lack of such a requirement reflects FRA's intentional, reasoned judgment that such matters need not be regulated to promote railroad safety. In that circumstance, "States are not permitted to use their police power to enact such a regulation." *Marshall*, 720 F.2d at 1154 (quoting *Ray*, 435 U.S. at 178). On Winecup's incorrect theory, every state—and every municipality—could adopt its own regulation on culvert size. That result would totally frustrate Congress's goal of "[n]ational uniformity of regulation" in rail-safety matters. 49 U.S.C. § 20106(a)(1).

*Second*, even setting aside FRA's deliberate decision not to regulate culvert size, FRSA preemption does not require a federal rule explicitly addressing the exact issue in question.

---

[2] *See Gallo v. Union Pac. R.R. Co.*, Case 1:17-cv-00854-RP, ECF #54-27.

Because FRSA preemption applies whenever "federal regulations substantially subsume the subject matter," it is "unnecessary for the federal regulation to be identical to the state [requirement] for preemption to apply." *CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 816–17 (6th Cir. 2002) (quoting *Easterwood*, 507 U.S. at 664). For example, no FRA regulation governs whether and when a train may block a road crossing. *See* FRA, *Trains Blocking Highway-Rail Grade Crossings Fact Sheet*, at 1 (May 2008), https://tinyurl.com/y7th9bsu. Yet many courts hold that the FRSA preempts state laws on this subject because federal regulations on train speed, train length, and braking tests sufficiently cover the subject matter. *See City of Plymouth*, 283 F.3d at 816–17; *see also, e.g.*, *Ass'n of Am. Railroads v. Hatfield*, No. 3:18-cv-28, 2020 WL 465023, at *6, __ F. Supp. 3d __ (E.D. Ky. 2020); *Lewis v. Norfolk Southern Ry. Co.*, 618 F. Supp. 2d 833, 846 (W.D. Tenn. 2008); *City of Seattle v. Burlington Northern R. Co.*, 41 P.3d 1169, 1174 (Wash. 2002); *Village of Mundelein v. Wisconsin Cent. R.R.*, 882 N.E.2d 544, 553–54 (Ill. 2008); *Krentz v. Consolidated Rail Corp.*, 910 A.2d 20, 36–37 (Pa. 2006). This case is even easier, because § 213.33 expressly covers the subject matter of Winecup's defense: "drainage or other water carrying facility under or immediately adjacent to the roadbed."

Winecup relies heavily on *Gallo* to avoid preemption, but that decision does not help Winecup here. In *Gallo*, the owners of property next to a rail line sued the railroad for damage to their property caused by the railroad's allegedly negligent "design, construction, inspection, and maintenance of its railroad embankment and ballast." *Gallo v. Union Pac. R.R. Co.*, 372 F. Supp. 3d 470, 476 (W.D. Tex. 2019). The court held that § 213.33 "does not cover state law negligence claims by adjacent property owners" because the regulation "is concerned with railroad safety, *not preventing damage to neighboring property*." *Id*. at 483–84 (emphasis added). That ruling is consistent with FRA's own description of § 213.33 as "not cover[ing] neighboring property unrelated to the safety of railroad operations," *see* FRA Letter Opinion 2–3, and with other cases

emphasizing "the silence of § 213.33 on a *railroad's duties to its neighbors*," *MD Mall Associates, LLC v. CSX Transportation, Inc.*, 715 F.3d 479, 491 (3d Cir. 2013) (emphasis added).

In sharp contrast, this case does not involve "a railroad's duties to its neighbors" or "damage to neighboring property"; it involves *damage to Union Pacific's own track*. Unlike the neighboring landowners' negligence claims in *Gallo*, Winecup's contributory negligence defense directly addresses the "roadbed and areas immediately adjacent to roadbed," FRA Letter Opinion 2; *accord* 49 CFR § 213.31, which in turn directly impact railroad safety. Winecup's defense thus falls in the heartland of § 213.33, which serves to "reduce the risk of train derailments caused by *flood damage to railroad tracks and structures*." FRA Letter Opinion 3 (emphasis added). Because *Gallo* addresses a different type of claim that does not implicate "railroad safety," *id.* at 2, it is not useful here.[3]

## II. Godwin's Testimony Does Not Address § 213.33.

Winecup argues that even if § 213.33 covers the subject matter of its contributory negligence defense, that would merely establish that § 213.33 supplies the controlling standard of care, and "Godwin's testimony would still be relevant to interpreting section 213.33." ECF No. 161 at 8. Winecup is only half right, however. True, the FRSA does not bar a claim "alleging that a [railroad] has failed to comply with the Federal standard of care established by a regulation." 49 U.S.C. § 20106(b)(1). So Winecup theoretically could try to hold Union Pacific contributorily negligent for violating § 213.33. But Winecup has not made that case. Its expert Godwin did not

---

[3] Winecup also suggests that "negligence-based claims are not preempted by the FRSA or its corresponding regulations." ECF No. 161 at 7–8 n.4. That too is incorrect. *Easterwood*, the Supreme Court's leading FRSA preemption case, held that regulations requiring certain warning devices at road crossings "preempt *all state negligence claims* regarding the adequacy of the safety requirements at the crossing." *Union Pacific R. Co. v. Calif. Pub. Utilities*, 346 F.3d 851, 865 (9th Cir. 2003) (emphasis added); *see Easterwood*, 507 U.S. at 664, 675 (emphasizing FRA's "power to preempt state common law"). The cases Winecup cites either involve flooding claims by neighboring landowners (as in *Gallo*), *see MD Mall Assocs.*, 715 F.3d at 493–95; *Jeffers v. BNSF Ry. Co.*, No. 14-CV-188, 2014 WL 1773532, at *1, 5 (W.D. La. May 1, 2014), or simply hold that other FRA regulations addressing different topics did not preempt other negligence claims on different facts, *see Strozyk v. Norfolk Southern Corp.*, 358 F.3d 268, 269 (3d Cir. 2004) (warning-device regulation "does not cover claims of limited visibility and negligent maintenance" at crossings); *Shanklin v. Norfolk Southern Ry. Co.*, 369 F.3d 978, 986 (6th Cir. 2004) (similar). These cases are not useful here either.

even acknowledge that § 213.33 exists, let alone try to show that Union Pacific violated it. Instead, his entire opinion rests on the premise that Union Pacific's internal technical manual for industry track supplies the controlling standard of care. Because that premise is wrong, Godwin's testimony has no bearing on any "fact in issue." Fed. R. Evid. 702(a) (2020). It should be excluded.

## CONCLUSION

Union Pacific respectfully requests that the Court grant UPMIL 7 and bar generally, Winecup's contributory (comparative) negligence defense and, in particular, Godwin's opinion that Union Pacific was negligent.

Date: June 9, 2020              Respectfully submitted,

                                UNION PACIFIC RAILROAD COMPANY

                                  /s/ Riley C. Mendoza
                                SHOOK HARDY & BACON LLP
                                Gary M. Elden (Admitted Pro Hac Vice)
                                Riley C. Mendoza (Admitted Pro Hac Vice)
                                Kathleen M. Ryan (Admitted Pro Hac Vice)
                                111 S. Wacker Drive, Suite 4700
                                Chicago, Illinois 60606
                                Telephone: (312) 704-7700
                                Email: gelden@shb.com
                                rmendoza@shb.com
                                kxryan@shb.com

                                PARSONS BEHLE & LATIMER
                                Michael R. Kealy, Esq., NV Bar No. 971
                                Ashley C. Nikkel, Esq., NV Bar No. 12838
                                50 W. Liberty Street, Suite 750
                                Reno, Nevada 89501
                                Telephone: (775) 323-1601
                                Email: mkealy@parsonsbehle.com
                                anikkel@parsonsbehle.com

                                *Attorneys for Plaintiff*
                                *Union Pacific Railroad Company*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the law firm of Shook, Hardy & Bacon, LLP, and that on June 9, 2020 I filed a true and correct copy of the foregoing document with the Clerk through the Court's CM/ECF System, which sent electronic notification to all registered users addressed as follows.

David J. Jordan, Esq.
Michael R. Menssen, Esq.
Stoel Rives, LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131
Email: david.jordan@stoel.com
michael.menssen@stoel.com

William E. Peterson
Wayne Klomp
Janine C. Prupas
Snell & Wilmer, LLP
50 West Liberty Street, Suite 510
Reno, NV 89501

*Attorneys for Defendant Winecup Gamble, Inc.*

Date:  June 9, 2020                     */s/ Natalie A. Funk*
                                        Employee of Shook, Hardy & Bacon LLP