William E. Peterson (1528)
wpeterson@swlaw.com
Janine C. Prupas (9156)
jprupas@swlaw.com
Wayne Klomp (10109)
wklomp@swlaw.com
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, NV 89501
Telephone: (775) 785-5440
Facsimile: (775) 785-5441

David J. Jordan (Utah Bar No. 1751)
david.jordan@stoel.com
Michael R. Menssen (Utah Bar No. 15424)
michael.menssen@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

*Attorneys for Defendant*
*Winecup Gamble, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WINECUP GAMBLE, INC., a Nevada Corporation,<br><br>Defendant. | Case No. 3:17-cv-00477-LRH-CLB<br><br>**WINECUP GAMBLE'S REPLY MEMORANDUM IN SUPPORT OF ITS FIRST MOTION IN LIMINE TO EXCLUDE DARYOUSH RAZAVIAN'S TESTIMONY RELATED TO MILE POST 670.03 [ECF No. 141]** |

Defendant Winecup Gamble, Inc. ("Winecup") submits this reply memorandum in support of its First Motion in Limine ("Motion") to exclude the opinions and testimony of Plaintiff Union Pacific Railroad Company's ("Union Pacific") expert, Daryoush Razavian, relating to the source of the water that caused damage to Union Pacific's track at mile post 670.03, including his opinion that water from the 23-Mile Dam reached that location.

## I.   INTRODUCTION

Union Pacific's Response attempts to confuse the issue at hand and distract from Winecup's arguments. In the process, Union Pacific mischaracterizes Lindon's opinion, ignores key aspects of Winecup's Motion, provides a conclusory narrative about the path of the water in lieu of facts and data, and focuses on an argument Winecup does not make.

This motion deals with a key factual dispute in the case: the source of the water that caused the Union Pacific's tracks to wash-out at mile post 670.03. The tracks at that location are in the Loray Wash drainage, which drains water from the mountains to the west and to the south. The 23-Mile Dam is on Thousand Springs Creek, which drains the mountains to the north. Union Pacific asserts that water from the 23-Mile Dam left its drainage and reached mile post 670.03 in sufficient quantity to cause the washout at that location. Winecup asserts that the damage was caused by water from the Loray Wash drainage. This motion does not ask the Court to decide that factual dispute. Rather, the issue in this Motion is whether Razavian can offer an expert opinion on this issue that satisfies the requirements of Rule 702. Winecup's Motion explained that the answer is no.

Union Pacific's Response does not show otherwise. While the Response shows that Razavian can tell a story about the source of the water that aligns with Union Pacific's theory, that story is full of unsupported assumptions and conclusions. In addition, the Response highlights that Razavian did not use any scientific methodology to reach his opinions. He did not conduct a survey to determine relevant elevations to learn if it was even possible for water to traverse from one drainage to the other. He did not use a hydrological computer model. He did not identify the dividing line between the two drainages. He did not determine how much water would have already been flowing in the Loray Wash during the flood. And he did not even

STOEL RIVES LLP
ATTORNEYS AT LAW
SALT LAKE CITY

1

conduct an on-the-ground field investigation. Instead, his methodology amounted to looking at a large scale topographical map that was not detailed enough to support the opinion he offers and speculating about the source of ice. That is not a reliable methodology for determining whether water could travel the course Union Pacific claims. More scientific rigor should be required for an expert opinion on such an important claim.

In addition, Union Pacific's Response fails to address Winecup's argument that Razavian failed to disclose any opinion related to the cause of the washout at mile post 670.03. For example, Razavian has not offered any opinion about how much water would be needed to cause the washout at mile post 670.03, how much water he claims escaped from the Thousand Springs Creek drainage, or how much water was flowing in the Loray Wash at the time.

Finally, Union Pacific's attacks on Lindon's opinion are wrong. He has not offered inconsistent opinions. Nor has he changed his opinions. Union Pacific simply misrepresents his opinions. Moreover, Lindon did not offer two "demonstrably wrong" facts in the Motion. Union Pacific claims that Lindon's description that the landscape was hummocky is wrong, but Union Pacific refers to a different location than Lindon described. Likewise, Union Pacific claims that Lindon was wrong in calling a geographic feature the "southern branch of the Loray Wash," claiming instead that feature is called "Tuttle Creek." But that is a meaningless dispute about nomenclature. There is no debate that the southern branch of the wash exists—as demonstrated by the satellite photos Union Pacific ignored. Moreover, the very document Union Pacific relies on for the name Tuttle Creek shows the existence of both branches and uses the name Tuttle Creek for both, meaning Tuttle Creek is simply an alternative name for the Loray Wash—it is not referencing a different wash.

Winecup's Motion should be granted. Razavian should not be permitted to offer expert testimony related to the source of the water that caused damage to Union Pacific's track at mile post 670.03.

## II. RESPONSE TO UNION PACIFIC'S ASSERTION OF FACTS

Winecup does not undertake to respond to all of the facts asserted by Union Pacific with which Winecup disagrees. Instead, it will limit this response to correcting erroneous statements

about Lindon's opinion and to point out opinions by Razavian that are being raised for the first time.

### A.  Incorrect Statements Related to Lindon's Opinion.

Union Pacific states that Lindon's hydrological model "is based on public domain data without considering evidence from photos, eyewitnesses, and the like." Response at 2. That is wrong. Lindon explained that he reviewed evidence to calibrate the hydrological model to ensure that it matched observed reality. *See, e.g.,* Lindon Decl. at ¶ 15, ECF No. 120-1.

Union Pacific claims that Lindon's testimony about a "hummocky" landscape is wrong, but Union Pacific misrepresents that testimony. Union Pacific claims that Lindon opined that the land near Tecoma Road was hummocky. *See* Response at 2, 3, 9, 16, 20. But that is not the correct location. Lindon stated that the hummocky landscape was north of mile post 670.03, not near the Tecoma Road. *See* Lindon Decl. at ¶ 7, ECF No. 141-2. And Lindon should know; he actually walked the land, unlike Razavian. The Tecoma Road is farther west. Notably, the hummocky landscape Lindon referred to can be seen in the contour lines on the topographical map Union Pacific relies on in the area between the Tecoma Road and mile post 670.03. *See* Response at 4 (excerpt of map).

Union Pacific also criticizes Lindon's description that the Loray Wash has a southern branch, claiming that an ancient document shows the southern branch to be a different wash called Tuttle Creek. But that document simply provides a different name for a section of the same wash—it does not show a different wash. This is simply a dispute about nomenclature. Moreover, the document Union Pacific provides is fully consistent with Lindon's opinion and the satellite photos Winecup included with its Motion (which Union Pacific ignored). Those photos show the Loray Wash splitting into two branches near mile post 670.03, with the northern branch being a straight, diversionary branch and the southern branch following a natural, meandering course. The ancient document shows the same thing. It shows a curving branch labeled "Tuttle Creek" below the track, and it shows a straight "pilot channel of Tuttle Creek" above the track. *See* ECF No. 153-35; *see also* Response at 8. That document calls *both* branches "Tuttle Creek," including the northern branch that Union Pacific claims to be the only branch of the Loray Wash. This

1  document thus confirms Lindon's description. Whether labeled Tuttle Creek or not, both branches
2  are clearly part of the Loray Wash.

3  Finally, Union Pacific does not accurately describe the information contained in
4  Winecup's Third Supplemental disclosure. Response at 16. While Union Pacific mentions that the
5  supplemental disclosure contained an update of Lindon's model, it omits that the disclosure also
6  contained survey results and photographs taken during the survey. *See* ECF No. 153-2.

7  **B.     Examples of New Opinions by Razavian.**

8  Union Pacific asserts, for the first time, that Razavian's opinion is that water from the 23-
9  Mile Dam crossed Highway 233 near Tecoma Road and then turned east to cross the tracks at
10 about mile post 669. Response at 2. That opinion is not mentioned in his expert report (ECF No.
11 141-28), his deposition, or the prior declaration he submitted in this case (ECF No. 111-7). Under
12 this new opinion, water from the 23-Mile Dam would have been in the Loray Wash drainage for
13 over a mile before reaching mile post 670.03. Razavian is now altering his opinion about the
14 course of the water to avoid the hummocky landscape.

15 Union Pacific also describes Razavian's opinion to be that "the water could not have come
16 from the west" and that this is proved "by proper use of accepted hydrological methodology for
17 determining runoff." Response at 2-3. This is yet another new opinion. Razavian has not
18 previously disclosed any opinion about a "hydrological methodology for determining runoff"
19 applied to the Loray Wash drainage. Moreover, this opinion is unsupported. Razavian has not
20 disclosed any information about the runoff from the mountains in the Loray Wash drainage, and
21 without that information, Razavian cannot offer an opinion about how much water would have
22 been in the Loray Wash.

23 Union Pacific also claims that Razavian now has an opinion that water from the Loray
24 Wash could not have washed out State Highway 233. Response at 6. Neither the factual basis for
25 that opinion or the methodology on which it is based is provided.

26 Union Pacific also asserts that "water could easily flow downhill near Tecoma Road, as
27 pictures and topographic maps prove." Response at 3. Again, that opinion is new. Moreover, it is
28 not supported by the topographical map, and Union Pacific does not identify any photographs it is

referring to. The topographic map shows an elevation of 4796 at the location where the Tecoma Road intersects highway 233. But there are not any other relevant elevation markings to show whether the Loray Wash or railroad are uphill or downhill from that location. Moreover, Union Pacific and Razavian claim that water crossed highway 233 *near* that intersection, not at that intersection. The topographical map does not support that assertion.

Finally, Razavian adds still another opinion that the Loray Wash had been dry for months and could not have been the source of ice, claiming that any precipitation would have been in the form of snow and not rain. Response at 7. That opinion also lacks any basis, ignores the common occurrence of snow melting during sunny winter days and refreezing into ice, and is inconsistent with the expert report of Union Pacific's own meteorologist who opines that the winter of 2016-2017 was the fourth wettest on record. *See* Lavin Expert Report at 4-5, ECF No. 111-30.

**III.   ARGUMENT**

**A.   Razavian's Opinion about Milepost 670.03 Fails to Satisfy Rule 702.**

Rule 702 requires an expert's testimony to be "the product of reliable principles and methods." Yet Razavian's opinion is not based on any disclosed methodology. Indeed, Union Pacific's Response does not even attempt to identify a methodology. *See* Response 20-22. The lack of methodology is particularly significant here because there are recognized methodologies that readily could have been used to address the factual issue in question. Razavian could have gathered survey data to determine relevant elevations for the area between the two drainages, he could have created a computer hydrological model, or he could have conducted an on-the-ground field investigation. He did none of those things. The only thing Razavian did was look at a high-level, low-detail topographical map. But the topographical map does not provide sufficiently detailed elevation readings to support Razavian's opinion. As a result, his opinion related to mile post 670.03 fails to satisfy Rule 702.

Razavian also fails to base his opinion on sufficient facts or data, as required by Rule 702. To form an expert opinion that water escaped one drainage and joined another, an expert must obtain essential data about relevant elevation points. But Razavian does not determine the relevant elevations in the Thousand Springs Creek Drainage, he does not determine the relevant

1  elevations for the Loray Wash drainage, and he does not determine the relevant elevation for the
2  boundary between the Thousand Springs Creek drainage and the Loray Wash drainage. Likewise,
3  Razavian does not cite any underlying facts to determine how much water from the 23-Mile Dam
4  would have escaped its drainage. In addition, to support his new opinion that "water could not
5  have come from the west," *see* Response at 2-3, Razavian would need underlying facts about the
6  amount of runoff from the mountains in the Loray Wash drainage and the amount of water
7  flowing in the Loray Wash during the relevant time period. But Razavian has not disclosed any
8  such facts, nor has he claimed to have based his opinion on those facts. Without doing so,
9  Razavian does not have the necessary facts to support his opinion about the source of the water
10 that reached mile post 670.03.

11       The limited information on which Razavian does rely is not sufficient to compensate for
12 the essential facts he is missing. The Response largely repeats the same facts already discussed in
13 the Motion, such as Razavian's reliance on a 20-foot contour topographical map that is not
14 detailed enough to provide the relevant elevations, speculation about the source of ice, and
15 observations from locations that are already inside the Loray Wash drainage and cannot be used
16 to determine the source of the water.[1] As explained in the Motion, those facts do not provide a
17 sufficient basis to offer an expert opinion based on scientific knowledge. And without sufficient
18 facts, Razavian is merely offering an inadequately supported non-expert opinion. It should not be
19 permitted under Rule 702.

20       **B.**    **Razavian Should Not Be Allowed to Offer Opinions That Were Not Disclosed.**
21       Winecup also points out in the Motion that even if Razavian were permitted to offer an
22 opinion that some water from the 23-Mile Dam escaped its drainage and reached mile post
23 670.03, he should not be allowed to expand his opinion and testify about topics not previously
24 disclosed, such as how much water from the 23-Mile Dam reached 670.03 or how much water
25 would be required to cause the washout at 670.03.

---

[1] The Response also discusses deposition testimony from various Union Pacific employees, but Union Pacific admits that Razavian did not rely on the deposition testimony cited in the Response. *See* Response at 10. As a result, that deposition testimony is not a basis for Razavian's opinion and is not relevant to this Motion.

1    Union Pacific's Response does not address that argument. Instead, it introduces two
2  different issues that Winecup did not raise. First, Union Pacific argues that it alleged from the
3  outset of the litigation that it was suing for damage to four washouts, including mile post 670.03.
4  *See* Response at 13-14, 18. But that is irrelevant to the Motion. Winecup's Motion does seek
5  dismissal of Union Pacific's claims concerning mile post 670.03. This Motion is about the
6  admissibility of Razavian's opinion testimony.
7    Second, Union Pacific argues that it disclosed some opinions from Razavian about mile
8  post 670.03. Again, Union Pacific misses the point of Winecup's argument. Winecup does not
9  dispute that Razavian disclosed the opinion (in his deposition) that some water from the 23-Mile
10 Dam escaped its drainage and reached mile post 670.03. Winecup asserts that testimony should
11 be excluded because it does not satisfy Rule 702. But that limited opinion is the extent of
12 Razavian's disclosure. He did not provide any further disclosure that would allow him to opine
13 about the cause of the washout at 670.03, or any other topic related to 670.03.
14   To the extent Union Pacific is attempting to claim that Razavian disclosed an opinion
15 about the cause of the washout at mile post 670.03 in his expert report, that argument fails. The
16 Response references a single sentence in paragraph 17 of Razavian's expert report. *See* Response
17 at 14, 19 (citing ¶ 17 on page 16 of Razavian's Report, ECF No. 141-28). But the cited sentence
18 does not contain any opinion about 670.03. It only refers to unnamed "washouts," and the context
19 makes clear that it is describing the three embankments downstream of the Dake Dam, not
20 670.03. Indeed, the sentence immediately preceding it specifically refers to mile posts 672.14,
21 677.32, and 679.32 and does not mention 670.03. The sentence preceding it also states that it is
22 discussing the "flood surge that was initiated from Dake." *Id*. at ¶16. That context is reinforced in
23 paragraph 17 itself, which says the washouts were "a direct results of the destructive forces of the
24 flood surge caused by failure of the 23-Mile Dam *and Dake's spillway/embankment*." *Id*. at ¶17
25 (emphasis added). By referencing the flood coming from the Dake spillway, it is clear that
26 sentence is not referring to 670.03, as there is no dispute that water flowing through the Dake
27 spillway did not reach 670.03. Thus, it would be disingenuous to claim that this single sentence is
28 disclosing an opinion related to 670.03. And in any case, if that single sentence were interpreted

1  as a reference to 670.03, it would lack the foundational requirements of Rule 702. The expert
2  report does not include any facts or data to support a causation opinion related to 670.03, nor does
3  it reference any methodology.

4  **IV.    CONCLUSION**

5      For the reasons set forth above and in the Motion, Winecup's First Motion in Limine
6  should be granted.

8  DATED: June 12, 2020

/s/ *Janine C. Prupas*
William E. Peterson (Bar No. 1528)
Janine C. Prupas (Bar No. 9156)
Wayne Klomp (Bar No. 10109)
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, NV 89501

David J. Jordan (Utah Bar No. 1751)
Michael R. Menssen (Utah Bar No. 15424)
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111

*Attorneys for Defendant
Winecup Gamble, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I served a true and correct copy of the foregoing **WINECUP GAMBLE'S REPLY MEMORANDUM IN SUPPORT OF ITS FIRST MOTION IN LIMINE TO EXCLUDE DARYOUSH RAZAVIAN'S TESTIMONY RELATED TO MILE POST 670.03 [ECF No. 141]** via CM/ECF electronic filing on the following:

Michael R. Kealy
mkealy@parsonsbehle.com
Ashley C. Nikkel
anikkel@parsonsbehle.com
PARSONS BEHLE & LATIMER
50 W. Liberty Street, Suite 750
Reno, NV  89501

Gary M. Elden
Gelden@shb.com
Riley C. Mendoza
mendoza@shb.com
SHOOK HARDY & BACON LLP
111 S. Wacker Drive, Suite 4700
Chicago, IL  60606

*Attorneys for Plaintiff Union Pacific Company*

Dated this 12th day of June, 2020.

By:  */s/ Holly W. Longe*