1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   UNION PACIFIC RAILROAD COMPANY,
    a Delaware corporation,

8                                        Plaintiff,

9        v.

10

11   WINECUP RANCH, LLC, an Idaho Limited
     Liability Company; and WINECUP
12   GAMBLE, INC., a Nevada corporation; and
     PAUL FIREMAN, an individual,

13                                       Defendants.

14

Case No. 3:17-cv-00477-LRH-CLB

ORDER

15        Before the Court is the issue of how to calculate damages should Union Pacific Railroad

16   Company ("Union Pacific") prevail at the upcoming trial. Winecup Gamble, Inc. ("Winecup")

17   intends to have its expert Derek Godwin testify on the cost of rebuilding the earthen embankments

18   and culvert structures washed out during the at-issue flood event. ECF No. 160. Winecup's

19   position is that even if it is liable for Union Pacific's damages, it should be held responsible for

20   only the cost to rebuild these structures less depreciation. Union Pacific did not rebuild the earthen

21   embankment and culvert structures at certain locations but chose instead to build steal bridges.

22   Union Pacific contends that, should it prevail, Winecup should be responsible for the increased

23   cost associated with building these bridges, not just the cost of replacing the earthen embankments

24   and culverts. Because Union Pacific argued its position on calculating damages for the first time

25   in a reply to one of its own motions in limine, the Court permitted Winecup to file a sur-reply so

26   that both sides had a full and fair opportunity to articulate their respective positions. *See* ECF Nos.

27   198 & 199. Having reviewed the parties' arguments, the record in this case, and the relevant case

28   law, the Court finds that should Union Pacific prevail, the proper measure of damages will be the

cost of restoration, i.e., the cost to repair the washed-out sections of track and restore the property to its *former* condition, less depreciation.

## I.     BACKGROUND

Union Pacific owns railroad track that runs through twenty-three western states, a portion of which runs east/west across the Utah/Nevada state line and through Elko County, Nevada. ECF No. 89 at 1–2. Winecup owned and managed the Dake Reservoir dam (ID #NV00109, legal description 189DN40 E70 07D) and 23 Mile dam (ID #NV00110, legal description 189CN42 E67 15BA),[1] both located in Elko County, Nevada. *Id*. at 2. On or about February 8, 2017, the 23 Mile Dam overtopped and breached in two locations which, Union Pacific alleges, caused water to flow downstream into the Dake Reservoir. *Id*. at 5. The water influx into the Dake Reservoir caused the dam to erode and ultimately breach which led to flooding. *Id*. at 5–6. As a result of the flooding, portions of earthen embankments which supported Union Pacific railroads were washed out, leaving the railways inoperable and suspended in the air. *Id*. at 6. As a result of the damage, Union Pacific chose to replace the washed-out earthen embankments with new steel bridges to make the railways operable again.[2] ECF No. 160 at 6–7. Union Pacific reported its total cost to repair the four washouts was $18.5 million.[3] ECF No. 139 at 9. An expert witness for Winecup, Derek Godwin, calculated that the earthen embankments could have been rebuilt for $4.28 million. ECF No. 160 at 7.

Union Pacific's amended complaint alleges negligence, negligence per se, trespass and nuisance. ECF No. 89 at 6–12. Union Pacific filed its fifth and sixth motions in limine to bar two opinions of Winecup's expert Derek Godwin. ECF No. 139. In its response to the two motions, Winecup argued that "Union Pacific can only recover the cost to rebuild the embankments structures that previously existed," not the cost of the new steel bridges Union Pacific chose to

---

[1] The record indicates that this dam is also known as Twenty One Mile Dam or 21 Mile Dam. *See* ECF No. 154-2 at 5.

[2] The record indicates that only three of the four earthen embankments destroyed by the flood were replaced with new steel bridges; the fourth was replaced with a new earthen embankment. *See* ECF No. 199 at 6 n1.

[3] Union Pacific claims approximately $13 million in damages for building three steel bridges. ECF No. 199 at 6 n.1.

1    build as replacements. ECF No 160 at 7. In its reply, Union Pacific argued that it "is not limited to
2    the costs to replace the exact structures that existed before the flood." ECF No. 178 at 10.

3        In the Court's view, Winecup had not had a full and fair opportunity to respond to Union
4    Pacific's damage calculation arguments; it therefore ordered Winecup to file a sur-reply, which
5    was timely filed. ECF No. 199. In its sur-reply, Winecup argued that "the law does not allow Union
6    Pacific to improve the condition of its property by building steel bridges and [receive]
7    reimbursement for the cost of the upgrade[.]" ECF No. 199 at 6. The Court's order now follows.

8    **II.    DISCUSSION**

9        The purpose of damage awards in tort is "to compensate plaintiffs for losses incurred," and
10   as far as money can do, place the plaintiff in the same, or as near as possible, to the position that
11   they would have occupied if the wrong had not occurred. *Felder v. United States*, 543 F.2d 657,
12   667 (9th Cir. 1976) (quoting C. McCormick, LAW OF DAMAGES § 137 at 560 (1935)); *Am. Access*
13   *Cas. Co. v. Cruz*, No. CV16-0173, 2018 Nev. Dist. LEXIS 362, at *48 (Feb. 14, 2018) (citing
14   Ronald Eades, JURY INSTRUCTIONS ON DAMAGES IN TORT ACTIONS § 1.01 (5th ed., Mathew
15   Bender 2012)). For damages to land that do not amount to total destruction of value, the Second
16   Restatement of Torts provides that a plaintiff is entitled to (1) either the cost of restoration or "the
17   difference between the value of the land before the harm and the value after the harm;" (2) "the
18   loss of use of the land;" and (3) "discomfort and annoyance to [the plaintiff] as an occupant."
19   RESTATEMENT (SECOND) OF TORTS § 929 (1979). If the damage occurred to something attached to
20   the land, but severable, the plaintiff may elect to recover "the loss in value to the thing instead of
21   the damage to the land as a whole." *Id.*

22       The law of Nevada generally follows the Second Restatement: "[W]hen an injury is done
23   to property, the cost of restoring the property to its condition before the injury would be the proper
24   measure of damages, unless there is total destruction of the property or the cost of restoration
25   exceeds the value of the property." *Wells Enters. v. Wells Bloomfield, LLC*, 989 F. Supp. 2d 1055,
26   1059 (D. Nev. 2013). The cost of restoration may be calculated in one of three ways: (1) "the cost
27   of repairs which would be necessary to restore the [property] to its former condition less
28   depreciation," *Richfield Oil Corp. v. Harbor Ins. Co.*, 452 P.2d 462, 467 (Nev.1969); (2) the cost

of replacing the property less depreciation, see *Harvey v. Sides Silver Mining Co.*, 1 Nev. 539, 543 (1865),[4] or (3) "the actual value of the property at the time and place it was destroyed," *Witt v. Nev. Cent. R. Co.*, 44 P. 423, 428 (Nev. 1896). However, the plaintiff is "not entitled to receive an amount greater than the value of the property destroyed by the trespasses of the defendant." *Waters v. Stevenson*, 13 Nev. 157, 173 (1878) (discussing *Harvey*, 1 Nev. 539)). And the plaintiff should not be placed in a better position than they would have been had the wrong not occurred. *Valdez v. Taylor Auto Co.*, 278 P.2d 91, 98 (Cal. Ct. App. 1954).

Pursuant to Nevada law, should Union Pacific prevail in this case, the proper measure of damages will be the cost of restoration, i.e., the cost to repair the washed-out sections of track and restore the property to its former condition, less depreciation. The jury will decide the total cost of damages appropriate given this calculation.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that, should Union Pacific prevail, the proper measure of damages will be the cost of restoration, i.e., the cost to repair the washed-out sections of track and restore the property to its former condition, less depreciation.

IT IS SO ORDERED.

DATED this 19th day of January, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[4] The Nevada Supreme Court further reasoned: "Where an injury is done to a building, . . . the cost of putting it in as good condition as it was before the injury would be the proper measure of damage, for in most cases of the kind such cost would in fact, be the actual damage suffered by the complainant, though where there was total destruction of a building it was held that the value of the building, and not the cost of rebuilding it, was the proper measure of damage." *Harvey*, 1 Nev. at 542.

4