UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WINECUP RANCH, LLC, an Idaho Limited Liability Company,<br><br>Defendants. | Case No. 3:17-cv-00477-LRH-CLB<br><br>ORDER |

Before the Court are Winecup's Seventh and Eighth Motions in Limine (ECF Nos. 224 & 225). Union Pacific filed responses to both motions (ECF Nos. 227 & 228). For the reasons explained below, the Court denies both motions.

I.     **BACKGROUND**

Union Pacific owns railroad track that runs through 23 Western states, a portion of which runs east/west across the Utah/Nevada state line and through Elko County, Nevada. ECF No. 89 ¶ 1. Winecup owned and managed the Dake Reservoir dam and 23 Mile dam,[1] both located on Thousand Springs Creek, in Elko County, Nevada. *Id.* at ¶¶ 2–4. On or about February 8, 2017, the 23 Mile dam overtopped and breached in two locations. *Id.* at ¶ 20; ECF No. 108 ¶ 19. Union Pacific alleges that because of the dam's failure, water flowed downstream, in part, to the Dake Reservoir dam, and that the Dake then eroded and breached, causing flooding, and ultimately washing out a significant portion of Union Pacific's railroad tracks. ECF No. 89 ¶¶ 22–24.

Union Pacific filed its original complaint on August 10, 2017, against Winecup Gamble, Winecup Ranch, LLC, and Paul Fireman. ECF No. 1. Union Pacific amended its complaint twice

---

[1] The record indicates that this dam is also known as 21 Mile dam. *See* ECF No. 154-2 at 5.

1

(ECF Nos. 37 & 89). After the two amendments, the only remaining defendant, Winecup Gamble, filed an answer (ECF No. 91). After numerous settlement conferences and trial postponements due to COVID-19, the case is set for a jury trial in September 2022. The parties' pre-trial motion practice has centered around motions in limine. To date, Union Pacific has filed 21 and Winecup Gamble has filed 9. In December 2020, the Court issued an order (ECF No. 198) resolving the 27 motions in limine that were pending at that time. The Court now resolves Winecup Gamble's seventh and eighth motions in limine.

## II.     LEGAL STANDARD

"A motion *in limine* is used to preclude prejudicial or objectionable evidence before it is presented to the jury." Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2018). The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless the "evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the court, and the court may change such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

## III.    DISCUSSION

**A. The Court denies Winecup Gamble's seventh motion in limine to exclude proposed expert testimony disclosed by Union Pacific on June 13, 2022.**

The parties dispute whether Union Pacific's supplemental expert disclosure on June 13, 2022, violates Federal Rule of Civil Procedure 26 ("Rule 26"). Winecup Gamble asserts that the disclosure violates Rule 26, and therefore the Court must exclude it, because (1) it is untimely and seeks to add a new theory of damages that would unfairly prejudice Winecup Gamble; (2) Steve Dolezal qualifies as a retained expert and therefore needed to provide an expert report; and (3) the disclosure is an improper expansion of Union Pacific's previously disclosed computation of

damages. ECF No. 224 at 12. In response, Union Pacific argues that exclusion of the expert testimony is not warranted because (1) Rule 26 did not require Union Pacific to serve a supplement containing the information; (2) even if a supplement was required, Union Pacific complied with the Rule 26(e) requirements; and (3) any violation of Rule 26(e) would be substantially justified and harmless in this case. ECF No. 227 at 16, 19–20.

As an initial matter, the Court notes that Union Pacific complied with the expert disclosure requirements during discovery. Union Pacific disclosed Steve Dolezal as a witness in its initial Rule 26(a)(1) disclosure on November 8, 2017, and in its initial expert disclosure on October 15, 2018. ECF No. 224 at 44, 62. In the initial expert disclosure, Union Pacific listed Dolezal as a non-retained expert because he was an employee that "through [his] experience, knowledge and training, ha[s] opinions regarding issues relevant to this case." *Id.* at 62. Specifically, Union Pacific disclosed that Dolezal has knowledge about damages associated with rerouting costs and would testify regarding Union Pacific's methodology for tracking, calculating, and billing the rerouting costs. *Id.* He would also testify and offer opinions about Union Pacific's rerouting costs being fair, reasonable, and caused by the Defendants. *Id.* On February 28, 2019, Union Pacific supplemented its initial expert disclosure and explained that Dolezal would testify that the rerouting strategy suggested by Winecup's expert, Derek Godwin, would have "result[ed] in additional rerouting costs, delays, decreased throughput, and various logistical problems with the management of Union Pacific's train traffic and schedules." *Id.* at 69. Throughout discovery, and up to this point, the parties treated Dolezal as a non-retained expert witness.

The question before the Court today is whether Rule 26 required Union Pacific to file a supplement disclosure regarding Dolezal's testimony. And if so, whether Union Pacific complied with the Rule 26 requirements.

Rule 26(e) requires a party who made an expert disclosure under Rule 26(a) to supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an

incomplete report based on information that was not available at the time of the initial disclosure." *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009) (quotation omitted). Under this standard, the Court finds that Union Pacific did not need to provide a supplemental disclosure.

Union Pacific's initial disclosures were complete and correct and did not change in some material respect. Since the beginning, Union Pacific disclosed that Dolezal would testify regarding Union Pacific's methodology for tracking, calculating, and billing rerouting costs. This proved true at his deposition in February 2019, where Dolezal answered Winecup's questions regarding the rerouting costs associated with railroad line outages while bridges were built. Winecup, however, chose not to question Dolezal about what costs Union Pacific would have incurred if the duration of the outages was extended to build culverts. If asked, Dolezal could have explained what costs Union Pacific would have incurred because the calculations would be based on the same documents and data as the costs associated with building bridges. Thus, it is clear to the Court that Dolezal's testimony has not changed in some material respect that required Union Pacific to file a supplemental disclosure.

Further, to the extent Winecup argues that a supplemental disclosure was needed because Dolezal is now a retained expert, the Court is unpersuaded. Union Pacific originally classified Dolezal as a non-retained expert because he was an employee whose testimony would be based on the experience, knowledge, and training he had as an employee. Though Dolezal has since retired, that fact alone does not change Dolezal from a non-retained expert to a retained one because "a former employee may be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation." *Guarantee Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013). Dolezal's testimony is based on his personal knowledge of the facts and data at issue in this litigation. Accordingly, the Court finds that Dolezal is a non-retained expert. Because the plain reading of Rule 26(a)(2)(B) requires an expert report for only retained experts, the Court also finds that Union Pacific did not need to provide an expert report for Dolezal.

However, even if an expert report was required, the Court finds that Union Pacific's failure to comply with Rule 26(a)(1)(B) does not warrant exclusion of Dolezal's testimony. The normal remedy for failure to comply with Rule 26(a) is exclusion of the information or witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Several factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017).

Here, Union Pacific's failure to provide an expert report containing information regarding Dolezal's testimony was substantially justified and harmless. The expansion of Dolezal's testimony to include the rerouting costs of installing culverts should come as no surprise to Winecup. Part of Winecup's defense is that Union Pacific spent more money than necessary when building the bridges and therefore Union Pacific is not entitled to recover the entire $19.4 million it spent. After the issue of the governing law for damages was raised, the Court made it clear that Union Pacific could only recover that amount if it was less than the amount necessary to restore the property to its old condition of culverts. ECF No. 214 at 1, 3. Thus, as part of its case, Union Pacific would need to prove that $19.4 million was less than the cost of restoring the property to its former condition. Union Pacific seeks to do so through the testimony of Dolezal, the expert previously disclosed to discuss rerouting costs. The Court is satisfied that Union Pacific's offer for Winecup to re-depose Dolezal fully remedies any harm or prejudice to Winecup that could occur because of the Dolezal's additional testimony. This testimony is not based on any new data or documents, but rather upon materials that Winecup has had since 2019 and had a full opportunity to question Dolezal about during his initial deposition. Re-deposing Dolezal to question him about his new testimony should not take long and does not require altering the trial date. Therefore, the Court finds that any failure by Union Pacific to comply with Rule 26(a)(1)(B) was substantially justified and harmless.

Accordingly, the Court denies Winecup's seventh motion in limine.

**B. The Court denies Winecup Gamble's eighth motion in limine to exclude a 2002 report and letter concerning the 21-Mile Dam.**

In its eighth motion in limine, Winecup asks the Court to exclude two pieces of evidence, a 2002 Report regarding the 21-Mile Dam's safety inspection and a letter concerning the 21-Mile Dam, because they are inadmissible under the Federal Rules of Evidence. ECF No. 225 at 2. Specifically, Winecup argues that the evidence is irrelevant, its probative value is substantially outweighed by the danger of confusing the issues and misleading the jury, and it constitutes inadmissible hearsay. *Id*. However, for the Court to exclude evidence before trial, evidence must be "clearly inadmissible on all potential grounds." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Otherwise, the Court's decision "should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne*, 831 F. Supp. at 1400. After reviewing the parties' arguments, the Court finds that the admissibility of the 2002 Report and the letter is an issue best determined at trial where it can be adjudged in proper context and the Court can assess the value and utility of the evidence in the light of the witness's testimony. *See Tracey v. Am. Fam. Mut. Ins. Co.*, Case No. CIV. 1257 GMN PAL, 2010 WL 3724896, at *2 (D. Nev. Sept. 17, 2010) (opining that courts are "almost always better situated during trial to assess the value and utility of evidence") (quotation omitted). Accordingly, the Court denies Winecup's eighth motion in limine without prejudice.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Winecup's Seventh and Eighth Motions in Limine (ECF Nos. 224 & 225) are denied.

IT IS SO ORDERED.

DATED this 25th day of August, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE